Filed 2/23/24  In re M.R. CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| In re M.R. et al., Persons Coming Under the Juvenile Court Law. | B329615 |
| _____ | Los Angeles County |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | Super. Ct. No. 19CCJP07255B-H |
| Plaintiff and Respondent, | |
| v. | |
| M.M. et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Brett Bianco, Judge.  Affirmed.

Joseph T. Tavano, under appointment by the Court of Appeal, for Defendant and Appellant M.M.

Jack A. Love, under appointment by the Court of Appeal, for Defendant and Appellant H.R.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Jacklyn K. Louie, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

A mother and father appeal on the basis of improper inquiry under the Indian Child Welfare Act and related state law. (25 U.S.C. § 1901 et seq.; Welf & Inst. Code, § 224 et seq., the Act.) We affirm because any error was harmless.

Undesignated statutory citations are to the Welfare and Institutions Code.

Seven of the mother's children are involved in this case. The five younger children have the same father. He and the mother are appellants. The two eldest children have a different father, who is deceased.

The juvenile court denied a petition for modification under section 388. The court later terminated parental rights over the five younger children. The parents appealed the section 388 orders and the orders terminating parental rights. At the mother's request, we consolidated the appeals.

We dismiss this appeal as to the two eldest children—J.A. and Mad.A.—because it is moot. The Department moved to dismiss and the mother did not file an opposition. J.A. turned 18 and the juvenile court returned Mad.A. to the mother's custody. The juvenile court terminated jurisdiction over them. We grant the Department's December 28, 2023 request for judicial notice of the relevant juvenile court orders. The mother's sole contention on appeal is about inquiry under the Act. Because J.A. is a legal adult and Mad.A. is in the mother's custody, there is no actual controversy to decide. (See *In re D.P.* (2023) 14 Cal.5th 266, 276.)

The case is moot as to the two eldest children and there is no reason to exercise our discretion to review orders as to them.

We use "the children" to refer to the five younger children for the remainder of the opinion.

We recount basic facts of the case and of inquiry under the Act. Then we explain why any inquiry error was harmless.

At first, the children remained with the mother. The court later removed them, returned them to the mother's custody, and removed them a second time. The removals were under section 340, subdivision (b). After the second removal, the children were placed with a paternal aunt, who is their prospective adoptive parent.

When the case began, the mother said she and the father lacked Indian ancestry. The mother consistently denied ancestry throughout the case.

In December 2020, the father denied Indian ancestry on a parental notification of Indian status form. In September 2021, his counsel submitted a form that did not say the father had ancestry, but said the youngest child "is or may be" a member of, or eligible for membership in, a tribe. The form did not list a tribe. The father did not sign the form. The signature line says, "completed with counsel by telephone."

At the next hearing, the court acknowledged the alleged ancestry and said, "Counsel said there's no Indian heritage." The father's counsel did not dispute this. The father was present on speaker phone and did not speak on this issue.

The maternal grandmother and paternal grandmother attended the hearing for termination of parental rights. The court asked them whether their family had Indian ancestry. The maternal grandmother said "No" and the paternal grandmother

3

said "No, no." The court found the Act did not apply and it terminated parental rights.

We review findings under the Act for substantial evidence. (*In re Josiah T.* (2021) 71 Cal.App.5th 388, 401.)

When a county welfare department takes a child into temporary custody, section 224.2, subdivision (b) requires it to ask the child's extended family members about whether the child is, or may be, an Indian child.

Unless otherwise defined by an Indian child's tribe, an extended family member is an adult who is "the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 U.S.C. § 1903(2); Welf. & Inst. Code, § 224.1, subd. (c) [adopting federal definition].)

Beyond "extended family members," the California statute requires inquiry of others who have an "interest" in the child and the party who reported abuse or neglect. (§ 224.2, subd. (b).)

The mother identifies several extended family members the Department "had contact with or knew about," but did not ask about Indian ancestry. These are: a maternal great-grandmother, two maternal aunts, two maternal uncles, one paternal uncle, and two paternal aunts. The father makes the same argument and adds there is no evidence the Department inquired of the person who originally reported abuse.

Starting with the great-grandmother, extended family inquiry does not apply to her. (25 U.S.C. § 1903(2) [great-grandparents not included in definition of extended family].) The parents do not argue other bases for inquiry of her. For example, they do not argue she was a person with an interest in the children. Nor do the parents identify evidence of any contact or

4

attempted contact between the great-grandmother and the children to demonstrate she had an interest in them. The Department never had contact with the great-grandmother during this case. The record only references her as someone who helped raise the mother. The statute did not require the Department to find and inquire of the great-grandmother.

Turning to the remaining relatives, any error was harmless based on inquiry of the parents and of the maternal and paternal grandmothers. Inquiry of parents and of extended family members on both sides of a family can sometimes be sufficient. (*In re E.W.* (2023) 91 Cal.App.5th 314, 323–324, 319 [agency satisfied initial inquiry by inquiring of parents, maternal aunt, and paternal grandmother but not other relatives, including cousin, aunt, uncle, and two grandfathers].) Here, all of the aunts and uncles are younger relatives of the grandmothers. Elders are usually the ones to educate younger family members about family ancestry. As the people closest to the past, elders generally know more family history than younger people. Certainly there can be exceptions, but the exceptions prove the rule. Absent further information, which is missing here, we will not presume junior family members know more about family ancestry than their elders. Any error in not inquiring of the aunts and uncles was harmless.

So too was any error in inquiry of the reporting party. This case began in 2019 when the mother called police because the father had slapped and bit her. The detention report includes the text of a police report, which ends by saying, "DC[FS] was notified at 0102 hours. [¶] DCFS worker Mel Hawkins provided reference number [19-digit number]." The reporting party was the police. There is no reason to think the police had information

5

about the family's ancestry the parents and the grandmothers lacked.  This was harmless.

### DISPOSITION

We dismiss the appeal as to the two eldest children, J.A. and Mad.A.  The orders are otherwise affirmed.


WILEY, J.

We concur:


STRATTON, P. J.


GRIMES, J.